UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
FULLSEND, INC.,

                Plaintiff,

      - against -

NELK, INC.,

                Defendant.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
21-CV-5639 (PKC) (RML)

PAMELA K. CHEN, United States District Judge:

In this action, Plaintiff FullSend, Inc. ("FullSend"), seeks declaratory judgments and monetary damages regarding trademarks to which Defendant Nelk, Inc. ("Nelk") claims rights and ownership. Presently, Nelk has filed a partial motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), challenging FullSend's state law tortious interference and trade libel claims. For the reasons stated herein, the Court grants Nelk's motion in its entirety.[1]

---

[1] For the purposes of this motion, the Court accepts all non-conclusory allegations in the Plaintiff's First Amended Complaint ("FAC") as true. *See Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020). As discussed *infra*, the Court takes judicial notice of trademark applications and registrations publicly filed with the United States Patent and Trademark Office ("USPTO"). *See, e.g.*, *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (stating that the Court can consider public records that are integral to the complaint). The Court also takes judicial notice of those documents appended to the Motion, upon which the FAC substantially relies and which are integral to it, including two letters sent by Nelk to FullSend. *See, e.g.*, *id.* ("Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered."); *Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991) (same). Finally, finding Nelk's argument that the FAC fails to adequately plead malice and wrongful means dispositive, the Court largely does not address Nelk's remaining arguments in support of its motion.

1

## BACKGROUND

### I. Facts

FullSend is an Oregon corporation engaged in the sale of CBD products, including gummies. (Dkt. 13, ¶¶ 3, 6.)[2] Nelk is a Canadian entity engaged in the sale of, among other goods, CBD skincare products. (*Id.* ¶¶ 7, 30; *see also* Dkt. 9.)

According to public records, in September 2014, the USPTO announced the registration of the FULSEND trademark, in connection with clothing products, for the benefit of "Nelk, Inc." (Dkt. 13-1 (describing Trademark number "4,613,485.").) In September 2020, Nelk asked to change that trademark from "FULSEND" to "FULLSEND," which the USPTO subsequently allowed. (Dkt. 13, ¶¶ 100–01.)[3] Similarly, between 2018 to 2020, at least two applications were filed with the USPTO to register the phrase "FULL SEND" as a trademark for the benefit of "Nelk, Inc.," which the USPTO granted in 2019 and 2020. (*See* Dkt. 13-1, at ECF[4] 3–6 (noting registration of trademarks "5,943,945" and "6,151,830" in connection with towels and entertainment products respectively).) On September 21, 2020, six more applications were filed with the USPTO to expand the scope of the existing "FULL SEND" trademarks, which the USPTO

---

[2] "CBD is a chemical compound derived from plants in the cannabscae family. Both marijuana and hemp contain CBD and can be used to make CBD products, such as oils." *In re Curaleaf Holdings, Inc. Sec. Litig.*, 519 F. Supp. 3d 99, 101 (E.D.N.Y. 2021).

[3] On file with the USPTO is a "Notice of Acceptance" filed in January 2021, and an "Updated Registration Certificate" filed in February 2021. (*See* United States Patent and Trademark Office, Trademark Electronic Search System (TESS), https://tmsearch.uspto.gov/bin/gate.exe?f=login&p_lang=english&p_d=trmk (select "Basic Word Mark Search (New User)," type "4,613,485," select "Serial or Registration Number" under "Field:," press "Submit Query," select "TSDR," and finally select the "DOCUMENTS" tab.).)

[4] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

granted for the benefit of "Nelk, Inc." in April and August 2021.  (*See* Dkts. 21-3, 21-4, 21-5, 21-6, 21-7, 21-8; *see also* Dkt. 21-3, at ECF 4 (noting that the purpose of the application was use on "stickers"); Dkt. 21-4, at ECF 4 (noting intended usage on "key chains"); Dkt. 21-5, at ECF 4 (noting intended usage in the "fashion" industry); Dkt. 21-8, at ECF 4 (noting intended usage in "online retail").).

Public records likewise show that on July 28, 2020, an Oregon entity named "FullSend, Inc." applied to the USPTO to register a trademark for the word FULLSEND, in connection with CBD gummies (the "July 2020 Application.").  (*See* Dkt. 21-19.)  The July 2020 Application included, as an example for usage of the mark, the following attachments:

    

(Dkt. 21-19, at ECF 8–10 (exhibit cropped by the Court).)  The same records state that the July 2020 Application was unsuccessful, and the USPTO eventually suspended it.  (*See* Dkt. 21-19, at ECF 1 (stating that an "action suspending further action on the application has been sent (issued) to the applicant").)

In March 2021, FullSend operated an Instagram page and used the domain "www.fullsendgummies.com," to market CBD gummies and vaping products.  (Dkt. 13, ¶¶ 17, 60; *see also* Dkt. 21-26, 2–4.)  On or about March 5, 2021, Nelk complained to Instagram that FullSend was violating Nelk's rights in three registered trademarks—4,613,485; 5,943,945; and 6,151,830—and two trademarks it sought to register: 88/621,767, and 88/133,370.  (*Id.* ¶¶ 17–20.)  This complaint resulted in the suspension of FullSend's Instagram account.  (*Id.* ¶¶ 18, 24, 137.)  FullSend alleges in the FAC here that it had previously offered "its products for sale on numerous e-commerce platforms, as well as to retail brick and mortar establishments," and due to the suspension of its Instagram account, FullSend's "relationship with its partners has been

permanently tarnished." (Dkt. 13, ¶¶ 125, 127.)[5] FullSend further alleges that Nelk's Instagram complaint led to "losses of at least $100,000." (*Id.* ¶ 135.)

> On March 23, 2021, Nelk sent FullSend a "cease and desist" letter stating in relevant part:
>
> Nelk is the exclusive owner of all right, title, and interest in and to the trademark FULL SEND and related marks, such as FULLSEND, . . . and the design mark  . . . (collectively, the "FULL SEND Marks") . . . . It has [also] recently come to our attention that . . . FullSend, Inc. has [made the July 2020 Application] [and] [commenced] registration and use of the domain name www.fullsendgummies.com[.]

(Dkt. 21-26, 2–4.) Nelk demanded that FullSend stop using the relevant marks and withdraw the pending July 2020 Application. (*Id.*) Public records state that on April 26, 2021, roughly a month after Nelk's March cease-and-desist letter, an Oregon entity named "FullSend, Inc." filed a fresh application with the USPTO to register a trademark for a logo, in connection with CBD gummies, numbered 90/671,618 (the "April 2021 Application."):

(Dkt. 21-20, at 2–6 (exhibit cropped by the Court).) Following the April 2021 Application, Nelk sent another letter to FullSend on July 8, 2021, which noted the April 2021 Application and stated in relevant part:

> The filing dates of Nelk's [registered trademarks and trademark applications] [namely, ] . . . September 18, 2019 and September 26, 2018, respectively[] each

---

[5] Responding to Nelk's argument that its pleadings were impermissibly vague, FullSend argued that the only relevant relationship with which Nelk allegedly interfered was with Instagram itself, not the unidentified "e-commerce platforms" and "brick and mortar establishments." (Dkt. 13, ¶ 125.) Because that argument finds some support in the FAC (Dkt. 13, ¶ 17 ("Defendant maliciously and without merit filed complaints with Instagram in an attempt to interfere with FullSend's business relationship with Instagram[.]")), the Court addresses it *infra*.

> predate[s] the filing date of [FullSend's pending July 2020 and April 2021 Applications, because] . . . Nelk [has a] prior . . . registration of the FULL SEND [marks] . . .

(Dkt. 21-27, at 1, 1 n.3.)

## II.      Procedural History

In October 2021, FullSend initiated this action against Nelk, and on February 15, 2022, filed the FAC.  (Dkts. 1, 13.)  The FAC seeks a declaration that FullSend has not infringed under the Lanham Act—and has not engaged in dilution, false designation of origin, federal unfair-competition, common law trademark infringement, bad-faith or cyberpiracy—with respect to the disputed trademarks.  (*Id*. ¶¶ 26–41, 42–46, 47–51, 52–55, 56–58, 59–64.)  FullSend also asks to cancel Nelk's trademark number 4,613,485, and seeks damages under New York tort law for "tortious interference with prospective economic advantage" and "trade libel."  (*Id.* ¶¶ 67–117, 118–38.)  On June 13, 2022, pursuant to Federal Rule of Civil Procedure 12(b)(6), Nelk moved to dismiss the tortious interference and trade libel claims.  (Dkt. 21.)  FullSend filed a memorandum in opposition, to which Nelk replied.  (Dkts. 22, 24.)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, the plaintiff's complaint need not "plead . . . specifics," but must still plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 102 (2d Cir. 2022) (same).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court "must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor," *UCAR Int'l Inc. v. Union Carbide Corp.*, 119 F. App'x 300, 301 (2d Cir. 2004) (citation omitted), however, "on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion

5

couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Thus, when "a given set of actions may well be subject to diverging interpretations, each of which is plausible . . . [t]he choice between [them] is not a choice to be made by the court on a Rule 12(b)(6) motion." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012). Conversely, "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" do not suffice to establish a facially plausible claim. *Iqbal*, 556 U.S. at 663. In short, "[d]ismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" *Uber Inc. v. Uber Techs., Inc.*, 521 F. Supp. 3d 455, 462 (S.D.N.Y. 2021) (ultimately citing *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000)).

## DISCUSSION

### I. Judicial Notice

#### A. Legal Standard

"[I]n ruling on a 12(b) motion to dismiss, the district court [is] permitted to consider matters of which judicial notice may be taken." *Simmons v. Trans Express Inc.*, 16 F.4th 357, 360 (2d Cir. 2021) (cleaned up). First, exhibits attached to the complaint can be considered. *See Roth*, 489 F.3d at 503) ("Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." (citation omitted)). Second, "[e]ven where a document is not [attached or] incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citation omitted); *In re Trib. Co. Fraudulent Conv. Litig.*, 10 F.4th 147, 176 (2d Cir. 2021) (same), *cert. denied sub nom. Kirschner v. FitzSimons*, 142 S. Ct. 1128 (2022). Third, the Court may consider documents, attached to the defendant's motion to dismiss, which the "plaintiffs had either

6

in its possession or had knowledge of and upon which they relied in bringing suit[.]" *Cortec Indus.*, 949 F.2d at 47. Finally, the Court may also take judicial notice of "public records." *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006). When taking judicial notice of a fact, the Court does so "for the limited purpose of noting what the documents state, rather than to prove the truth of their contents." *In re Arcimoto Inc., Sec. Litig.*, No. 21-CV-2143 (PKC), 2022 WL 17851834, at *4 (E.D.N.Y. Dec. 22, 2022) (quoting *Ganske v. Mensch*, 480 F. Supp. 3d 542, 546 (S.D.N.Y. 2020)).

### B. Application

Here, as discussed, the Court takes judicial notice of several documents relied upon by Plaintiff that are either public records or incorporated in and integral to the FAC. First, FullSend appended to the FAC copies of U.S. Trademark Registrations: (i) 4,613,485, (ii) 5,943,945, and (iii) 6,151,830. (Dkt. 13-1.) Thus, the Court may properly take judicial notice of their existence and the fact they relate to the trademark FULLSEND and are attributed to "Nelk, Inc." Second, the Court notes the existence of, and the statements contained in, trademark application and registration documents on file with the USPTO. *See Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005) (finding that "[t]he district court was entitled to take judicial notice of . . . federal copyright registrations, as published in the Copyright Office's registry."); *Knowles-Carter v. Feyonce, Inc.*, 347 F. Supp. 3d 217, 221 n.2 (S.D.N.Y. 2018) (Nathan, J.) (taking "judicial notice of the trademark registrations and other publicly available USPTO record to the extent that they are relevant in deciding this motion."). Nelk produced copies of such documents, which are now part of the record. (*See, e.g.*, Dkts. 21-3 to 9, 21-12, 21-13, 21-15 to 20.) Rightly or not, these filings attribute various trademark registration and application materials to an entity with Defendant's name and business address. (*Compare* Dkt. 21-3 at 1 (noting registration for "Nelk, Inc." whose address is "3170 Forrestdale Circle[,] Mississauga,

7

Ontario CANADA L5N6V4."), Dkt. 21-4, at 2 (same), Dkt. 21-5, at 2 (same) *with* Summons, Dkt. 4 (stating that Defendant's name is "NELK, INC." and address is "3170 Forrestdale Circle, Mississauga, Ontario CANADA L5N6V4.").) Third, the Court takes judicial notice of the two cease-and-desist letters sent by Nelk to FullSend, of which FullSend had actual knowledge. Indeed, FullSend admits it was personally aware of the letters and discusses their terms in detail. (Dkt. 13, ¶¶ 16–17.) Thus, based on these records and documents, the Court takes judicial notice of the fact that when the Instagram complaints were filed: (1) more than ten different applications, three of which were registered, were on file with the USPTO and attributed the "FULL SEND" and "FULLSEND" marks to an entity with Nelk's business address and name,[6] and (2) Nelk itself asserted rights to four of these marks in its March 2021 cease-and-desist letter to Plaintiff and complaint to Instagram.[7]

## II. Tortious Interference with Prospective Economic Advantage

### A. Legal Standard

"A claim for tortious interference with a prospective business relationship . . . must allege: (1) the defendant's knowledge of a business relationship between the plaintiff and a third party; (2) the defendant's intentional interference with the relationship; (3) that the defendant acted by the use of wrongful means or with the sole purpose of malice; and (4) resulting injury to the business relationship." *534 E. 11th St. Hous. Dev. Fund Corp. v. Hendrick*, 935 N.Y.S.2d 23, 24 (N.Y. App. Div. 2011); *684 E. 222nd Realty Co., LLC v. Sheehan*, 128 N.Y.S.3d 273, 275 (N.Y.

---

[6] Specifically, the relevant Trademark Registration numbers are: 4,613,485; 5,943,945; 6,151,830; 6,322,048; 6,322,047; 6,467,208; 6,467,210; 6,467,211. (Dkts. 13-1, 21-3–8.) Similarly, the pertinent Trademark Application Serial Numbers are: 88/621,767; 88/133,370; and 90/197,616. (Dkts. 21-9, 21-16, 21-18.)

[7] In March 2021, Nelk asserted rights in Trademarks Nos. 4,613,485; 5,943,945; 6,151,830; and in application number 88/621,767. (Dkt. 21-26, at 1.)

App. Div. 2020) (same); *accord Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 547 F.3d 115, 132 (2d Cir. 2008) (similar). "[C]onduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship." *Carvel Corp v. Noonan*, 818 N.E.2d 1100, 1104 (N.Y. 2004).

As to the third element, a plaintiff must plead facts showing "more culpable conduct than required for tortious interference with existing contracts." *Influx Cap., LLC v. Pershin*, 131 N.Y.S.3d 712, 715 (N.Y. App. Div. 2020) (cleaned up).[8] Facts demonstrating wrongful means or malice, to the exclusion of all other motives, are sufficient. *See Lombard v. Booz-Allen & Hamilton, Inc.,* 280 F.3d 209, 214 (2d Cir. 2002) (requiring a "factual showing" of these elements). Wrongful means "include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure[.]" *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 406 N.E.2d 445, 449 (N.Y. 1980). "The implication is that, as a general rule, the defendant's conduct must amount to a crime or an independent tort." *106 N. Broadway, LLC v. Lawrence*, 137 N.Y.S.3d 148, 157 (N.Y. App. Div. 2020). Malice is shown when a defendant "engaged in the conduct 'for the sole purpose of inflicting intentional harm on plaintiffs.'" *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 F. App'x 102, 106 (2d Cir. 2012) (citing *Carvel Corp*, 818 N.E.2d at 1103). Importantly, "conduct which is motivated by economic self-interest cannot be characterized as solely malicious." *Stuart's, LLC v. Edelman*, 152 N.Y.S.3d 472, 476 (N.Y. App. Div. 2021); *accord RFP LLC v. SCVNGR, Inc.*, 788 F. Supp. 2d 191, 196 (S.D.N.Y. 2011).

---

[8] FullSend originally had brought a tortious-interference-with-contract claim, which it later voluntarily dismissed. (*Compare* Dkt.1, ¶¶ 51–59 *with* Dkt. 13.)

9

**B**. **Application**

As presently pled, the FAC fails to state a claim for tortious interference with prospective economic advantage. First, the cease-and-desist letters, which Nelk directed to FullSend itself (and not a party that FullSend sought to do business with), afford no basis for recovery. *See Rockwell Glob. Cap., LLC v. Soreide L. Grp.*, PLLC, 954 N.Y.S.2d 22, 23 (N.Y. App. Div. 2012) (rejecting a business interference claim when the claimants "have not alleged that plaintiff's conduct was directed at the clients with whom defendants have or sought to have a relationship[.]").

Likewise, the FAC's assertion that Nelk's Instagram complaint harmed potential relationships with "numerous e-commerce platforms, as well as to retail brick and mortar establishments" does not state a prospective tortious-interference claim. (Dkt. 13, ¶ 125.) First, the claim is insufficiently pled because FullSend does not identify the relevant businesses with any specificity, and instead resorts to a nebulous description of a class of proprietors in unidentified locations and industries. *See Influx Cap., LLC,* 131 N.Y.S.3d at 715 ("In order to state a cause of action to recover for tortious interference with prospective economic advantage, the plaintiff must allege a *specific* business relationship with an identified third party with which the defendants interfered." (emphasis added)); *accord Girl Scouts of the United States of Am. v. Boy Scouts of Am.*, 597 F. Supp. 3d 581, 605 (S.D.N.Y. 2022) ("New York courts [have rejected,] for example, a claim containing 'only a general allegation of interference with customers without any sufficiently particular allegation of interference with a specific contract or business relationship[.]'" (cleaned up)). Second, while the FAC alleges that Nelk contacted FullSend and Instagram, New York law requires that "any conduct constituting 'wrongful means' must be directed at the third parties [themselves] with whom plaintiff sought to have the relationship[.]"

10

*Bradbury v. Israel*, 168 N.Y.S.3d 16, 19 (N.Y. App. Div. 2022) (citation omitted). As the FAC nowhere claims that Nelk contacted the businesses with whom FullSend anticipated trading, the Court finds that FullSend's prospective tortious-interference claim fails.

Plaintiff's argument that Nelk's complaint to Instagram interfered with the business relationship between FullSend and Instagram fares no better.[9] Generously construed, the FAC claims that Nelk deliberately misrepresented or overstated its rights to various trademarks in its Instagram complaint, knowing it had no rights to the relevant trademarks in truth. FullSend's position is unconvincing for several reasons. First, in the closely related context of litigation threats, courts in this Circuit have required a plausible allegation of bad faith before accepting that the assertion of legal rights was sanctionable. *See Pagliaccio v. Holborn Corp.*, 734 N.Y.S.2d 148, 149 (N.Y. App. Div. 2001) ("[C]ivil suits and threats thereof constitute 'improper means' only if such tactics are frivolous[.]"); *accord B & G Plastics, Inc. v. E. Creative Indus., Inc.*, 269 F. Supp. 2d 450, 468 (S.D.N.Y. 2003) ("Threatening to commence a lawsuit constitutes improper means 'only if brought in bad faith.'"); *Rauch Indus., Inc. v. Heart Artist LLC*, No. 22-CV-0909 (MKV), 2023 WL 2387194, at *6 (S.D.N.Y. Mar. 7, 2023) ("[T]he Second Circuit has explained that litigation is only wrongful [means] if it is 'frivolous, objectively unreasonable, or patently meritless,' or brought in subjective bad faith." (citation omitted)). Where, as here, there is no threat of litigation, but only a bare statement of legal title, courts in this Circuit appeared to have proceeded even more cautiously. *See Shenzhen Miracle Laptop Bags Co. v. Castillo*, No. 22-CV-7734 (HG), 2023 WL 1070464, at *4 (E.D.N.Y. Jan. 27, 2023) (finding that the defendant's assertion of trademark infringement in a complaint to Amazon against plaintiff amounted to

---

[9] The Court assumes for the purposes of resolving this motion, without deciding, that FullSend and Instagram had a business relationship.

"wrongful means" when evidence showed that defendant likely obtained the relevant trademark by defrauding the USPTO); *Sound Around Inc. v. Shenzhen Keenray Innovations Ltd.*, No. 22-CV-6943 (HG), 2022 WL 17811475, at *4 (E.D.N.Y. Dec. 18, 2022) (similar). Thus, even assuming *arguendo* that Nelk's legal position about its trademarks was wrong, the FAC still must include a "plausible allegation" that Nelk "acted for any reason other than [its] earnest, subjectively held belief that [others] were, in fact, infringing [its] [rights]." *Godinger Silver Art Ltd. v. Hirschkorn*, 433 F. Supp. 3d 417, 427 (E.D.N.Y. 2019); *see also Kid Car NY, LLC v. Kidmoto Techs. LLC*, 518 F. Supp. 3d 740, 763 (S.D.N.Y. 2021) (holding that a person's "belief, even if incorrect . . . does not amount to engaging in conduct 'for the sole purpose of inflicting harm on plaintiffs.'" (citation omitted)).

The FAC's skeletal and conclusory assertions of wrongdoing by Nelk do not satisfy that requirement and are woefully insufficient. The FAC repeatedly asserts that Nelk "knew or should have known" that its trademarks were invalid or that Nelk was overstating its rights with respect to those trademarks. (Dkt. 13, ¶¶ 90 ("Defendant knew or should have known that the [trademark ending with] 485 [was flawed] when it asserted . . . it in its complaints to Instagram."); *id.* ¶ 98 (similar); *id.* ¶ 113 (similar); *id.* ¶ 79 (similar).) But, with no facts allowing the Court to make those inferences, FullSend's allegations are insufficient. Similarly, FullSend may not simply state, in a conclusory fashion, that its legal theories about Nelk's trademarks are correct, and that Nelk must have known that from the start. (*See, e.g.*, *id.* ¶¶ 29 ("Defendant's [trademarks] are not strong or well-known."); *id.* ¶ 31 ("FullSend's [m]arks have priority over Defendant's [trademarks].").) The falsity, *vel non*, of Nelk's trademark infringement allegations in its Instagram complaint is not a factual allegation, but a legal conclusion that has not yet been adjudicated. *See Twombly*, 550

U.S. at 555 (reiterating axiomatic principle that court need not accept as true "legal conclusion[s] couched as . . . factual allegation[s]").

The Second Circuit's decision in *Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 797 F.2d 70 (2d Cir. 1986), where the Circuit found that the plaintiff ("Universal") had asserted trademark rights in bad faith, is instructive. There, in 1975, Universal sought to remake the movie "King Kong." *Id.* at 72. Universal successfully sued and obtained a declaratory judgment that the phrase "King Kong" was not a trademark. *Id.* at 73–74. Seven years later, after Nintendo released a successful video game called "Donkey Kong," Universal did an about-face and asserted that it owned exclusive trademark rights in the name "King Kong," which entitled it to a substantial cut of Nintendo's profits. *Id.* The Circuit agreed that Universal had asserted its trademark claim in bad faith, noting that Universal's president was "an attorney [who] personally knew the facts, background and nuances of the 1975 litigation," and that the vice-president of Universal's parent company had stated at the time that "Universal had no rights [in] [']King Kong.[']" *Id.* 76. Here, in stark contrast to Universal's conduct, nothing in the FAC suggests that Nelk has asserted its trademark claims in knowing disregard of their frivolousness. In fact, when Nelk complained to Instagram, several trademark registration and application documents were on file with the USPTO bearing Nelk's name and business address. In lieu of pleading facts, the FAC relies heavily on barebone and unsupported assertions that Nelk knowingly or maliciously proceeded with its complaint to Instagram. (*See, e.g.*, Dkt. 13, ¶ 37 ("Defendant knows or should have known that the [trademarks] cannot be plausibly asserted against the Plaintiff's Product [because] they are directed to unrelated goods and services."); *id.* ¶ 119 ("Defendant baldly asserted the [trademarks], knowing that such marks are not infringed by Plaintiff, and are invalid with reckless disregard of that knowledge."); *id.* ¶ 121 ("Asserting trademarks that Defendant knows are not infringed is bad

13

faith.").) On this record, the Court concludes that the FAC's allegations of wrongdoing by Nelk are plainly insufficient and dismisses the tortious interference claim.

### III. Trade Libel

#### A. Legal Standard

Under New York law, "[t]he tort of trade libel[,] or injurious falsehood[,] requires the knowing publication of false and derogatory facts about the plaintiff's business of a kind calculated to prevent others from dealing with the plaintiff, to its demonstrable detriment[.]" *Banco Popular N. Am. v. Lieberman*, 905 N.Y.S.2d 82, 82 (N.Y. App. Div. 2010). To successfully establish it, the plaintiff must adequately plead the following elements: "(1) falsity of the statement, (2) publication to a third person, (3) malice (express or implied), and (4) special damages." *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 291 (S.D.N.Y. 2016) (quoting *Angio-Med. Corp. v. Eli Lilly & Co.*, 720 F. Supp. 269, 274 (S.D.N.Y. 1989)) (brackets omitted). "As [c]ourts in this [Circuit] have explained, injurious falsehood is confined to denigrating the quality of the plaintiff's business's goods or services, whereas defamation involves impugning the basic integrity or creditworthiness of a business." *In Touch Concepts, Inc. v. Cellco P'ship*, 949 F. Supp. 2d 447, 483 (S.D.N.Y. 2013) (cleaned up), *aff'd*, 788 F.3d 98 (2d Cir. 2015); *Angio-Med. Corp.*, 720 F. Supp. at 274 ("Trade libel or product disparagement is an action to recover for words or conduct which tend to disparage or negatively reflect upon the condition, value or quality of a product or property.").

#### B. Application

FullSend's trade-libel claim likewise fails. First, for the reasons stated above, the FAC fails to plead any fact—aside from repeated conclusory assertions that Nelk must have behaved wrongly—suggesting malice. (*See, e.g.*, Dkt. 13, ¶ 133 ("Defendant knowingly, willfully, and with malice made a false statement to a third party, including at least in Defendant's complaint to

14

Instagram.").) Second, accepting the FAC's factual allegations as true, Nelk nowhere disparaged the products that FullSend sold. Rather, Nelk asserted that FullSend itself had behaved unlawfully by misappropriating Nelk's trademarks. Such allegations have nothing to do with the quality or condition of the CBD gummies that FullSend marketed. Thus, the Court dismisses FullSend's trade libel claim for failure to state a claim.[10]

## CONCLUSION

For the foregoing reasons, the Court grants Nelk's partial motion to dismiss FullSend's trade libel and tortious-interference-with-prospective-economic-advantage claims. The pending motion for oral argument is denied as unnecessary and moot.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 30, 2023
       Brooklyn, New York

---

[10] FullSend has not moved for leave to amend the FAC, and the Court sees no reason to grant it *sua sponte*. *See In re Am. Exp. Co. Shareholder Litig.*, 39 F.3d 395, 402 (2d Cir. 1994) ("The district court surely did not abuse its discretion in not *sua sponte* granting leave to replead.").